## In re Anonymous No. 81 D.B. 93

Disciplinary Board Docket no. 81 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MARROLETTI, *Member,* July 27, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Dis-

ciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 17, 1993, a petition for discipline was filed by petitioner, Office of Disciplinary Counsel. No answer was filed within the prescribed time.

The matter was referred for disciplinary hearing to Hearing Committee [    ] on November 1, 1993. The committee consisted of [    ], Esquire, Chairperson, [    ], Esquire, and [    ], Esquire, members.

On March 18, 1994 a disciplinary hearing was held.

Respondent filed a petition for extraordinary relief in the Supreme Court of Pennsylvania on March 30, 1994. Petitioner filed an answer to respondent's petition on April 12, 1994.

On May 20, 1994 the Supreme Court of Pennsylvania denied by order respondent's petition for extraordinary relief.

Petitioner filed a brief to the Hearing Committee on May 20, 1994, and respondent filed his brief to the Hearing Committee on June 30, 1994.

On September 8, 1994, the Hearing Committee filed its report, recommending that respondent receive a public censure.

Petitioner filed a letter advising that no exceptions would be filed to the report.

On October 11, 1994, respondent filed a brief on exceptions to the report of the Hearing Committee and under separate cover requested oral argument. Petitioner

filed a brief opposing exceptions on November 1, 1994, and respondent filed a reply brief.

A panel of the Disciplinary Board heard oral argument on the matter on December 15, 1994. The panel consisted of Alfred Marroletti, Esquire, acting as Chair of the panel, and Philip B. Friedman, Esquire, James J. Powell, Esquire and Robert J. Kerns, Esquire, members of the panel.

The matter was adjudicated at the December 16, 1994 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E., with the power to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the aforesaid rules.

(2) Respondent, [    ], Esquire, was born in 1944, was admitted to practice law in the Commonwealth of Pennsylvania in 1974, and his office is located at [    ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent was retained by [A] to handle, among other matters, a workers' compensation claim that [A] had filed against his employer in the spring of 1989. (N.T. 36.)[1]

---

1. "N.T." refers to the Notes of Testimony taken at the disciplinary hearing held on March 18, 1994. "P.E." refers to Petitioner's Exhibits admitted at the same hearing.

(4) As part of that representation, respondent attended a hearing before a workers' compensation referee in [    ] PA on June 1, 1989.

(5) At that hearing on June 1, 1989, [B] was the hearing stenographer. At the conclusion of that hearing, respondent requested that a copy of the transcript of that hearing be prepared.

(6) [B] prepared the transcript and sent it to respondent, along with a bill for $153, on July 3, 1989.

(7) Upon his receipt of that transcript, respondent advised [A] of the amount due to [B] for this transcript, and collected $150 in cash from [A] to pay for this transcript on July 12, 1989. Respondent advised [A] that he would give the extra $3 to [B] himself.

(8) When [B] did not receive payment for the transcript, she sent additional bills to respondent for this transcript after three months and "a month or two later," as was her normal practice when payment is not received following the first billing.

(9) When respondent still failed to pay this bill, [B] sent a letter dated March 29, 1990 to [A], to advise him that this bill was still unpaid and to ask for his "prompt attention" to this matter.

(10) [A] did not question respondent about this March 29, 1990 letter from [B] at that time. However, at a referee's hearing on [A's] workers' compensation claim on May 4, 1990, he did advise [B] that he had already paid respondent for that transcript, and he showed her a copy of his receipt from respondent.

(11) After the hearing on May 4, 1990, [A] went to respondent's [    ] office to discuss the nonpayment of [B's] bill. Because respondent was unavailable on that date, [A] left a copy of [B's] letter for him, on which [A] added a handwritten request for respondent

to forward the funds which [A] had given respondent to pay for the June 1, 1989 transcript.

(12) [B] also wrote a letter to respondent, dated May 15, 1990, stating that she had been shown a receipt for payment by [A], and again requesting his "prompt attention" to the matter of payment. (N.T. 76-77; P.E.-9.)

(13) On or about May 17, 1990, [A] met respondent on the street and asked him to pay [B]. Respondent called [B] on the phone, in [A's] presence, and promised her that he would pay the bill "as soon as possible." (N.T. 50-51, 78.)

(14) Despite this promise, respondent did not pay [B] for this transcript, and in fact, the bill remained unpaid as of the date of the disciplinary hearing. (N.T. 82.) Respondent has never advised either [B] or [A] that he would not turn the money provided by [A] over to [B]. (N.T. 51-52, 80.)

(15) [B] sent additional statements to respondent on June 29, 1990 (N.T. 78; P.E.-10) and on August 1, 1990 (N.T. 79; P.E.-11), but respondent never forwarded the money owed to her.

(16) Respondent was properly served with notice of the March 18, 1994 disciplinary hearing before the Hearing Committee, including by personal service. (N.T. 7-8, 18-22; P.E.-13.) Despite this notice, respondent failed to attend the hearing, to request a continuance, or to offer a reason why he failed to attend the hearing.

(17) At 9:54 a.m. on March 18, 1994, respondent caused a letter, addressed to "Hearing Committee [    ]," to be hand-delivered to the Office of Disciplinary Counsel, where the hearing in this matter was scheduled to be held beginning at 10 a.m. (P.E.-17.) This letter did not request a continuance or provide a valid reason

for respondent's subsequent failure to attend the scheduled hearing.

(18) Attached to respondent's letter was a "petition for extraordinary relief" which respondent represented had been filed with the Supreme Court of Pennsylvania.[2] That petition requested, inter alia, that the Supreme Court "[e]njoin the imminent bad faith prosecution scheduled for March 18, 1994." (P.E.-15, at 25.)

(19) During the hearing, a number of attempts were made to contact respondent at his [    ] law office, and the Offices of Disciplinary Counsel were periodically checked to ensure that respondent was not in fact waiting outside the hearing room. However, all attempts to locate or contact respondent during the hearing were unsuccessful.

## III. CONCLUSIONS OF LAW

The Disciplinary Board concludes that respondent has violated the following Rules of Professional Conduct:

R.P.C. 1.3—By failing to act with reasonable diligence and promptness in representing a client.

R.P.C. 1.15(b)—By failing to promptly notify the client or third person upon receipt of funds or other property in which the client or third person has an interest.

. R.P.C. 8.4(c)—Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

---

2. In actuality, that petition was apparently not accepted by the Prothonotary of the Supreme Court of Pennsylvania when an attempt was made to file it on March 18, 1994, and the petition was not in fact filed until on or about March 30, 1994. See respondent's brief, at 6-7, and N.T. 90.

## IV. DISCUSSION

The matter before the board began as a relatively minor incident and, were it not for the conduct of respondent, could have been long since disposed of, probably in a manner more favorable to respondent.

This case involves very simple and incontrovertible facts pertaining to receipt by respondent of $150, in cash, from his workers' compensation client which was intended for payment of a stenographic bill in the sum of $153.

On March 18, 1994, a disciplinary hearing was held to inquire into respondent's reason for not utilizing the $150 as directed by his client, *i.e.,* payment of the stenographic bill in the sum of $153 from July 12, 1989 until the above stated date of hearing.

Respondent, despite proper service and notice of the March 18, 1994 disciplinary hearing, failed to attend the hearing, failed to request a continuance and further failed to offer any reason why he did not attend the hearing. Instead of attending the hearing or requesting a continuance, respondent prepared a "petition for extraordinary relief" and sent a copy of same to the Hearing Committee representing that it had been filed with the Supreme Court of Pennsylvania. For reasons not pertinent herein, respondent's petition was not, in fact, accepted by the Prothonotary of the Supreme Court of Pennsylvania on March 18, 1994 and was not in fact filed until on or about March 30, 1994. That petition docket no. [    ], was denied by the Supreme Court of Pennsylvania by order dated May 20, 1994.

During the March 18, 1994 hearing, many attempts were made to contact respondent at his [    ] law office and the Offices of Disciplinary Counsel were checked periodically to ensure that respondent was not in fact

waiting outside the hearing. All attempts to locate or contact respondent during the hearing were unsuccessful.

The Hearing Committee proceeded to make a finding but, due to respondent's failure to appear, decided to keep the record open for 10 days, until March 28, 1994 to determine whether respondent's petition for extraordinary relief was, in fact, filed with the Supreme Court of Pennsylvania.

Respondent's petition, as above stated, was not filed prior to March 28, 1994 and, therefore, the record was closed pursuant to the procedure announced by the Hearing Committee on March 18, 1994. Respondent was notified of the procedure to be followed in closing the record and took no action to delay or prevent the closing of the record on the stated date.

The undisputed evidence presented to the Hearing Committee established that respondent's client, [A], gave respondent $150 in cash on July 12, 1989 to pay for the transcript of a hearing held on June 1, 1989 and prepared by [B], the hearing stenographer.

[B] testified that at the conclusion of that hearing respondent requested that a copy of the transcript of the hearing be prepared. The transcript was prepared by [B] and sent to respondent, along with a bill for $153 on July 3, 1989.

Respondent then advised his client, [A], of the amount due [B] for the transcript and collected $150 in cash from [A] to pay for this transcript on July 12, 1989. Respondent told [A] that he would add the extra $3 to pay [B] himself.

From that day until the present, respondent has failed to forward the sum received from [A], with or without the additional $3 to [B]. Accordingly, she sent additional

bills to respondent after three months and "a month or two later" as was her normal practice when payment is not received following the first billing.

On March 29, 1990, [B] sent a letter to [A] advising him that the bill was still unpaid and asking for his "prompt attention" to the matter.

At a referee's hearing on [A's] workers' compensation claim held on May 4, 1990, [A] advised [B] that he had already paid respondent for the transcript and he showed her a copy of his receipt from respondent. (P.E.-3.) In passing, it should be noted that respondent did not attend that hearing.

After the hearing on May 4, 1990, [A] went to respondent's [    ] office to discuss respondent's failure to pay [B's] bill. Respondent was unavailable on that date so [A] left a copy of [B's] letter on which he ([A]) had handwritten a request that respondent pay [B] the $150 that he ([A]) had given to respondent to pay for the June 1, 1989 transcript. (P.E.-3.)

On May 15, 1990 [B] again wrote to respondent stating that she had been shown a receipt for payment by [A] and again requesting his "prompt attention" to the matter of payment.

On or about May 17, 1990, [A] met respondent on the street and asked him to pay [B]. Respondent called [B] on the phone, in [A's] *presence,* and promised her that he would pay the bill "as soon as possible."

Notwithstanding this chain of events, respondent has not paid for the transcript to date. Also, respondent has not returned the $150, to his client, [A].

[B] sent additional statements to respondent on June 29, 1990 and on August 1, 1990, neither of which bore any fruit. To this point, this matter was still relatively simple and uncomplicated and one conducive to easy

resolution by reimbursement of the funds advanced by the client to the client, or by payment of same, to the stenographer.

Taking into consideration that respondent had previously received an informal admonition on November 9, 1992, and that—respondent had held the funds for over five years, together with respondent's failure to attend the hearing of March 18, 1994, which the Hearing Committee properly viewed as conduct evincing a disrespect for the Hearing Committee as well as the entire disciplinary process, the committee recommended that respondent be publicly censured by the Supreme Court of Pennsylvania.

It would be idle speculation to conjecture as to whether the board, upon review of the record as it then existed, would have agreed with the recommendation of the committee or something more or less severe, but the board was not given the opportunity to simply review that record as, on October 11, 1994, respondent, through his counsel, filed exceptions and brief in support of exceptions. Respondent also requested oral argument at that time.

The brief, consisting of some 34 pages along with a 12 page affidavit from respondent, occasionally addresses the primary issue, *i.e.,* the $150 in cash paid to respondent for a transcript and held by respondent for these many years, but, for the most part, consists of a vitriolic diatribe directed at Disciplinary Counsel, the board and [A].

The brief begins by averring a "stated policy of racial discrimination against respondent, an African-American attorney, continues with irrelevant allegations of theft of $3,000 from respondent's bank account by "a white lawyer" and continues throughout assigning blame for respondent's disciplinary problems to "racial harass-

ment and politics." Needless to say, except for the unsupported and scurrilous accusations in the brief no evidence, of any kind, exists in the record of this matter to even suggest that such accusations have any basis in fact.

Pursuant to respondent's request for oral argument, a panel of the Disciplinary Board was convened and heard oral argument on this matter on December 15, 1994. Counsel for respondent submitted argument essentially along the lines of the brief submitted. On December 16, 1994 the matter was adjudicated by the Disciplinary Board.

In determination of this matter the board considered the following: The principal function of the disciplinary system is to "protect the public from unfit [lawyers] and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986).

The board is required to assess the nature and extent of respondent's misconduct and to recommend appropriate sanctions. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

Petitioner bears the burden of proving violations of the Rules of Professional Conduct by clear and convincing evidence. *In re Anonymous No. 24 D.B. 89,* 8 D.&C.4th 207, 216 (1990).

After reviewing the hearing transcripts, the report of the Hearing Committee and the brief submitted, with oral argument by respondent's counsel, the board concludes that the petitioner has met its burden.

The very fact that respondent received the sum of $150 on July 12, 1989 specifically for the purpose of paying for a stenographic transcript and, to this date, has neither paid for the transcript nor reimbursed the

money to his client, from whom he received it, establishes satisfactorily violation of R.P.C. 1.3.

Violation of R.P.C. 1.15(b) is established by respondent's failure to promptly notify the stenographer, [B], of his receipt of the said funds and his further failure to promptly deliver the funds to her.

Respondent's retention of the funds from July 12, 1989, to date, satisfies the board that he has violated R.P.C. 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Respondent's misconduct is egregious. The record reveals a pattern of lies and denial culminating in a belated, spurious defense in this matter and at least one baseless lawsuit in another forum.

The Hearing Committee has recommended that respondent be publicly censured. The board agrees that respondent must be severely sanctioned but, in view of all that has taken place since the committee conducted its hearing, we are of the view that a period of suspension is the appropriate disposition.

In determining the appropriate period of suspension, the board looks to respondent's misconduct as well as any mitigating or aggravating factors. His attitude towards the disciplinary process appears to be consistent with the manner in which he handled the underlying case and the funds which are the subject of the present petition. Respondent failed to appear at the hearing of March 18, 1994 before the Hearing Committee. He further failed to present testimony and/or cross-examine witnesses at the first hearing and failed to avail himself of the opportunity to ask for a further hearing or present a defense during the time granted by the Hearing Committee following the initial hearing.

Instead of addressing the very simple matter of why he did not either pay the stenographic costs or reimburse the client, respondent chose instead to file a petition for extraordinary relief alleging a "bad faith prosecution" with no evidence upon which to sustain such a claim and later filed an apparently groundless complaint in the United States District Court, which complaint was dismissed by the court.

Accordingly, after reviewing respondent's egregious conduct, this board is of the opinion that respondent is not presently fit to continue the practice of law in this Commonwealth. This respondent's attitude and behavior denigrated the integrity of the bar and demonstrated that he is an unfit and reckless practitioner from whom the public deserves protection. *In re Anonymous No. 40 D.B. 91,* 21 D.&C.4th 484 (1993). In addition, we believe that to properly protect the public, respondent should be required to apply for reinstatement so that the board and the court may be confident that he meets the criteria set forth in *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 529, 426 A.2d 1138, 1142 (1981) where the court said inter alia, "[a] client must be able to look to his attorney for sound advice."

Respondent's conduct throughout this entire odyssey, to date, brings into serious question whether he can be expected to provide sound advice. In this uncomplicated matter, susceptible to prompt and honorable resolution, he chose instead to literally, in the vernacular, "make a federal case out of it" thus denigrating himself, his profession and the entire disciplinary process to the detriment of all.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to your honor-

114

able court that respondent, [     ], be suspended from the practice of law for one year and one day.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g) of the Pennsylvania Rules of Disciplinary Enforcement.

Mr. Leonard and Mr. Saltz dissent and would recommend a public censure.

Mr. Kerns did not participate in the adjudication of this matter.

### ORDER

And now, August 31, 1995 upon consideration of the report and recommendations of the Disciplinary Board dated July 27, 1995, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of one year and one day and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.